UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYANT KEY,<br>Plaintiff,<br>v.<br>MICROSOFT CORPORATION,<br>Defendant. | Case No. 25-cv-07141-JSC<br><br>**ORDER RE: MOTION TO DISMISS**<br>Re: Dkt. No. 41 |

Plaintiff Bryan Key brings numerous employment discrimination claims against former employer Microsoft Corporation. In his recently filed First Amended Complaint, Plaintiff added four fraud claims which allege Microsoft fraudulently misrepresented certain aspects of his employment including his compensation and performance expectations. (Dkt. No. 39.) Defendant's motion to dismiss these new claims (the Tenth, Eleventh, Twelfth, and Thirteenth causes of action) is now pending before the Court. (Dkt. No. 41.) Having carefully reviewed the parties' submissions, and having had the benefit of oral argument on August 6, 2026, the Court concludes Plaintiff has not pled sufficient facts to meet Rule 9(b)'s heightened pleading standard. The Court therefore GRANTS Defendant's motion to dismiss with leave to amend.

**BACKGROUND**

**I. FIRST AMENDED COMPLAINT ALLEGATIONS**

Plaintiff is a 42-year-old Black man, living with disabilities of Attention-Deficit/Hyperactivity Disorder ("ADHD"), depression, and anxiety. (Dkt. No. 39 at 5:14-17.[1]) Plaintiff began working at Microsoft on July 1, 2022 as an Adversity Account Manager. (*Id.*) At the time he was hired, he disclosed he had depression, and shortly thereafter, he disclosed his

[1] The First Amended Complaint does not use sequential paragraph numbers so, where possible, this memo refers to the ECF page and line number.

United States District Court
Northern District of California

United States District Court
Northern District of California

ADHD. (*Id.* at 5.) Throughout his tenure with Microsoft, his supervisor William Guess showed "preferential treatment towards his younger, female, non-Black, non-disabled colleagues." (*Id.* at 6:2-4.)

In September 2022, Plaintiff informed Mr. Guess he was experiencing an exacerbation of his ADHD symptoms because of the nationwide shortage of his prescribed medication, which was impacting his concentration and executive functioning. (*Id.* at 6.) In April 2024, Plaintiff experienced an exacerbation of his symptoms of depression and informed HR. (*Id.*) After Plaintiff disclosed he experienced an exacerbation of his depression, Mr. Guess then suggested Plaintiff seek an accommodation. (*Id.* at 6-7.) "Mr. Guess's comments reflected knowledge of Plaintiff's depression-related symptoms and the need for workplace support." (*Id.* at 7:1-3.) A month later, Mr. Guess gave Plaintiff a negative performance review. (*Id.* at 7:9-10.) Plaintiff asked about transferring to a different role or location and Mr. Guess told him that would not be possible because of his negative performance review. (*Id.* at 7:10-13.) The negative review also affected his bonus amount. (*Id.*) Around this same time, Plaintiff spoke with Benefits Business Partner Simi Kaur to ask about taking a leave of absence as a reasonable accommodation. (*Id.* at 7.) Ms. Kaur advised him of the process and he sought leave as a reasonable accommodation to address his health condition. (*Id.*)

The following month, Plaintiff complained to Workplace Investigations Team employee Deanna Tran in writing that he was being discriminated against due to his race, gender, age, and disability, and reported he had witnessed both misconduct and fraud. (*Id.* at 8.) Plaintiff then submitted a written complaint through Microsoft's Workplace Investigations Team reporting "Mr. Guess had directed him to pitch unapproved clients, including Kia and Volkswagen, under the 'Netflix in MAP' pilot, and that Mr. Guess had made compensation-impact representations regarding 'quota retirement' described further below." (*Id.* at 8:7-11.) Following this, Mr. Guess "retaliated against [Plaintiff] and the frequency and severity of harassment and discrimination intensified." (*Id.* at 8:12-13.)

On July 2, 2024, Plaintiff requested FMLA ("The Family and Medical Leave Act") and CFRA-protected ("California Family Rights Act") leave of absence. (*Id.* at 8.) Ms. Kaur

approved the leave. (*Id*. at 8:19-20.) That same day, Microsoft's Executive Vice President, Ms. Sainsbury-Carter, informed Plaintiff that his role was being eliminated and he was being laid off. (*Id*. at 9:1-4.) Plaintiff also discovered that his job title was "Advertising Account Management IC4," but the "IC4" was not listed in his offer letter. (*Id*. at 9:6-10.) Plaintiff notified Ms. Kaur that his role was being eliminated, and she informed him that "he could continue his leave of absence, and that she would temporarily pause the job elimination process, but that when his leave was over, he would no longer be employed with the company." (*Id*. at 9:10-16.)

In addition to Plaintiff's wrongful termination and employment misconduct claims present in the original complaint, Plaintiff now brings four new fraud claims against Defendant related to the nature of his work. (*Id*.) Plaintiff's four fraud claims rest on multiple alleged misrepresentations that took place before and during his employment at Microsoft. (*Id*.)

Plaintiff's first pled misrepresentation encompasses "Microsoft recruiters" communicating to Plaintiff that the Advertising Account Manager role was interchangeable with that of the senior-level compensation role, which took place between December 2021 and March 2022. (*Id*. at 11:1-3.) Plaintiff alleges the position he assumed after accepting the job offer placed him in a "materially junior individual contributor track lacking the represented leadership trajectory, authority, and compensation structure." (*Id*. at 11:4-8.) He also alleges being treated as an "IC4 role" during his performance review and subsequent elimination was "false" and "misleading." (*Id*.)

Plaintiff's second pled misrepresentation involves his unilateral transfer to a business segment, which he described as being "underperforming" and retaining "higher quotas" in December 2023. (*Id*. at 11:16-18.) He alleges that Microsoft leadership knew the nature of this business segment because of a November 2023 internal newsletter disseminated to the Microsoft sales organization. (*Id*. at 11.) Plaintiff alleges the newsletter reflected Microsoft's leadership's prior knowledge that there were issues with quota-setting and MSAN product, impacting compensation and performance outcomes. (*Id*.)

Plaintiff further alleges, in February 2024, Mr. Guess asked Plaintiff to "run point on a pitch" and communicated that "Netflix DOES retire MSAN AWF quota" over email. (*Id*. at

United States District Court
Northern District of California

11:23.) Plaintiff alleges that the statement was fraudulent because the "Netflix in MAP" program did not retire the quota for Plaintiff. He alleges "no quota relief was processed for Plaintiff in Microsoft's incentive compensation system (MINT)." (*Id*. at 12:5-6.)

He also alleges Microsoft disseminated "flawed and contradictory" client lists for the "Netflix in MAP" initiative, causing him to pursue clients including Kia and Volkswagen, who were not approved for the program. (*Id*. at 12.) He alleges Microsoft management had identified Kia and Volkswagen as clients approved for the "Netflix in MAP" program in February 2024 through internal Microsoft channels. (*Id*.) He alleges these client lists and communications created "foreseeable compensation and performance consequences when Plaintiff was directed to pursue those accounts" because Kia and Volkswagen were never approved for the "Netflix in MAP" program. (*Id*. at 12:11-14.)

Plaintiff alleges Ms. Sainsbury Carter made a false representation when she communicated to Plaintiff that the "Advertising Account Management IC4" role was being permanently eliminated because Microsoft "reposted an identical or substantially identical Advertising Account Management IC4 role on its public careers site and LinkedIn" ten days later. (*Id*. at 12.) Finally, Plaintiff alleges Deanna Tran of the Workplace Investigations Team made a misleading statement that his complaints were "unsubstantiated" and that relevant policies were applied evenly. (*Id*. at 13.) He alleges this statement was misleading because the investigation was not thorough nor was Plaintiff given the opportunity to review the investigation's basis for conclusion, and the outcomes was communicated to him after termination. (*Id*.)

As per Plaintiff's alleges injuries as a result of these four fraud claims, Plaintiff generally pleads he "suffered economic damages," some of which include lost earnings or compensation and reduced bonus eligibility. (*Id*. at 21-26.) He also alleges related injuries such as professional injury tied to performance metrics and emotional distress arising from the deceptive performance framework and its consequences. (*Id*.)

## II. PROCEDURAL HISTORY

Plaintiff filed his original complaint on July 7, 2025 in the Superior Court of the State of California, County of Alameda against Defendant and Mr. Guess, alleging (1) Wrongful

United States District Court
Northern District of California

Termination in Violation of Public Policy, (2) Race, Gender, Age and Disability Discrimination in Violation of FEHA (Gov. Code § 12940, subd. (a)), (3) Failure to Provide Reasonable Accommodation (Gov. Code § 12940, subd. (m)), (4) Failure to Engage in the Interactive Process (Gov. Code § 12940, subd. (n)), (5) Failure to Prevent Harassment, Discrimination and Retaliation (Gov. Code § 12940, subd. (k)), (6) Retaliation in Violation of FEHA (Gov. Code § 12940, subd. (h)), (7) Retaliation (Lab. Code § 1102.5), (8) Violation of California Family Rights Act ("CFRA") (Gov. Code § 12945.2), (9) Retaliation in Violation of CFRA (Gov. Code § 12945.2, subd. (k)). (Dkt. No. 1.)

Defendant timely removed the action from state court to this Court based on diversity jurisdiction. (*Id.* at 10.) Plaintiff thereafter voluntarily dismissed his claims against Mr. Guess. (Dkt. No. 13.) In May 2026, the parties filed a stipulation allowing Plaintiff to file an amended complaint which the Court granted. (Dkt. Nos. 37, 38.) Plaintiff then timely filed the operative First Amended Complaint alleging four additional fraud claims including Fraudulent Misrepresentation (Cal. Civ. Code §§ 1709, 1710), Promissory Fraud (False Promise) (Cal. Civ. Code § 1572(4)), Fraudulent Inducement – Role and Product Viability (Cal. Civ. Code §§ 1572, 1709), (13) Fraudulent Concealment ((Cal. Civ. Code § 1710(3)). (*Id.*) Defendant's motion to dismiss these fraud claims is fully briefed. (Dkt. Nos. 39, 41, 45, 47.)

## DISCUSSION

### I. FEDERAL RULE OF CIVIL PROCEDURE RULE 9(B)

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake" though "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. Proc. 9(b). "Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (cleaned up). "A plaintiff's burden in asserting a fraud claim against a corporate employer is even greater." *Lazar v. Superior Court*, 12 Cal. 4th 631, 645 (1996). Thus, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the

United States District Court
Northern District of California

misconduct charged." *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

## II. PLAINTIFF'S FRAUD CLAIMS

### A. Fraudulent Misrepresentation

The elements of fraudulent misrepresentation are: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damages." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004) (citations omitted). Plaintiff alleges Mr. Guess asking him to "run pitch on this point" regarding the "Netflix in MAP" program was fraudulent because the program did not retire MSAN AWF quota and no quota relief was processed for Plaintiff in incentive compensation systems thereafter. (Dkt. No. 39 at 22.) He alleges Mr. Guess knew, or acted with reckless disregard for the truth, that the representation was false at the time he made it because he would have had knowledge as to whether it was approved at the time. (*Id.*) He further alleges that Mr. Guess intended for Plaintiff to rely on this misrepresentation by continuing to work on Netflix MAP accounts; and because Plaintiff continued this work, he suffered injuries which he would have not otherwise. (*Id.* at 10-11.)

Drawing all inferences in Plaintiff's favor, the allegations of the First Amended Complaint do not support a plausible inference Mr. Guess knew the falsity of the quota-retirement structures' status and communicated this status with the intention to induce Plaintiff's detrimental reliance. Plaintiff also failed to plead specific facts alleging how such misconduct was directed towards him and how it injured him. So, he has not stated a claim for fraudulent misrepresentation.

### B. Promissory Fraud

The elements of promissory fraud are:

> (1) a promise made regarding a material fact without any intention of performing it; (2) the existence of the intent not to perform at the time the promise was made; (3) intent to deceive or induce the promisee to enter into a transaction; (4) reasonable reliance by the promisee; (5) nonperformance by the party making the promise; and (6) resulting damage to the promise[e].

*Behnke v. State Farm General Ins. Co.*, 196 Cal. App. 4th 1443, 1453 (Cal. App. 2011). Plaintiff's allegations do not support an inference these elements are satisfied.

Plaintiff alleges Mr. Guess and Defendant "communicated to Plaintiff that quota relief would be provided for accounts negatively impacted by product or organizational changes, including initiatives associated with MSAN and Netflix MAP," and in doing so created a contractual obligation with Plaintiff. (Dkt. No. 39 at 22:14-17.) Among other deficiencies, Plaintiff does not allege sufficient facts to support an inference Defendant never intended to keep a promise made in the February 2024 email, which stated "Netflix DOES retire MSAN AWF quota." Rather, Plaintiff makes conclusory allegations about the promises made to "induce [him] to continue performing." (*Id.* at 24:1-3.) But this is insufficient. *See Areias v. Applied Underwriters, Inc.*, No. 21-cv-00023-JST, 2021 WL 9598132, at *9 (N.D. Cal. Sept. 17, 2021) ("To satisfy Rule 9, Plaintiffs cannot rest merely on their own statement that the necessary intent existed." (citations omitted)).

**C. Fraudulent Inducement**

The elements of fraudulent inducement are the same as fraudulent misrepresentation. *Yi v. Circle K Stores, Inc.*, 258 F. Supp. 3d 1075, 1807 (C.D. Cal. 2017) (citing *City Solutions, Inc. v. Clear Channel Commc'ns.*, 365 F.3d 835, 839 (9th Cir. 2004)). Plaintiff alleges Defendant made fraudulent statements about his compensation potential and advancement opportunities as part of the hiring process to induce him to "accept[] and continu[e] employment, declin[e] other opportunities, invest[] time, and client goodwill in selling the represented initiatives, and structur[e] career expectations around the represented role scope and compensation potential." (Dkt. No. 39 at 25:21-22, 26:1-2.) These allegations are far too conclusory and general to state a claim.

**D. Fraudulent Concealment**

The elements of fraudulent concealment are:

> (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if

> he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.

*Kaldenbach v. Mutual of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 850 (Cal. App. 2009) (cleaned up). Plaintiff alleges Defendant maintained exclusive knowledge of "internal product instability, quota over-assignment, and policy or program constraints that materially impacted compensation eligibility and performance metrics for Plaintiff's assigned initiatives" and intentionally concealed such "material facts from Plaintiff while continuing to assign quotas and direct Plaintiff's sales activities toward to affected initiatives." (Dkt. No. 39 at 26.) He alleges but for Defendant's concealment, he would not have suffered injuries such as lost variable compensation, diminished incentive compensation, and reduced bonus eligibility. (*Id.* at 26.) Plaintiff's complaint does not plead sufficient facts demonstrating Defendant's active concealment or suppression of material fact. Nor does Plaintiff plead sufficient facts showing Defendant's duty to disclose such information, among other insufficiencies.

**III. FAILURE TO COMPLY WITH RULE 9(B)**

Construing all factual allegations in Plaintiff's favor, the First Amended Complaint fails to plead "'the who, what, when, where, and how' of the [fraudulent] misconduct charged. " *Vess,* 317 F.3d at 1106 (cleaned up). Because Plaintiff fails to state a claim under Rule 9(b)'s heightened pleading standard, the Court must dismiss the fraudulent misrepresentation, promissory fraud, fraudulent inducement, and fraudulent concealment claims.

**CONCLUSION**

Plaintiff's complaint fails to allege fraud with particularity in accordance with Rule 9(b). Thus, the Court GRANTS Defendant's motion to dismiss. However, the Court grants Plaintiff leave to amend to the extent he can plead specific facts satisfying Rule 9(b) and each element of the fraud causes of action. *See Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017) ("[A] district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." (quotation marks and citation omitted)). Plaintiff's amended complaint is due **August 28, 2026**. Plaintiff may not add additional parties or

claims without further leave of Court. If Plaintiff does not file a Second Amended Complaint by that date, the case will proceed on the other claims.

This Order disposes of Docket No. 41.

**IT IS SO ORDERED.**

Dated: August 7, 2026

JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California